# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**DARNELL WILSON**  PLAINTIFF

**v.**  No. 2:10CV91-M-S

**SHERIFF BILL RASCOE, ET AL.**  DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Darnell Wilson, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The defendants seek [57] summary judgment, and Wilson has responded. The matter is ripe for resolution. For the reasons set forth below, the defendants' motion for summary judgement will be granted and judgment entered for the defendants.

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v.*

*Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998).

In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

**Undisputed Material Facts**

Darnell Wilson was housed at the Desoto County Adult Detention Facility from November 17, 2009, until July 12, 2010. Wilson is currently housed in the Wilkinson County Correctional Facility. He describes himself as an effeminate homosexual. After his stay in the DeSoto County Jail, he was convicted in the Circuit Court of Desoto County of grand larceny, simple assault on a police officer, and fleeing a law enforcement officer. He was sentenced as a habitual offender and was transferred to the Mississippi Department of Corrections to serve a life sentence.

During his first week as a pre-trial detainee at the Desoto County Jail, Wilson alleges he filed thirteen grievances.[1] Jail records contain no written or verbal grievance forms from Darnell Wilson. There are no grievances on a supplied grievance form consistent with the administrative policy of the Desoto County Adult Detention Facility.[2] Wilson claims that the defendants did not use a proper grievance form with pink and yellow copies so that he could keep one for his records. He also claims that he filed numerous grievances that were neither answered nor filed. On December 10, 2009, approximately three weeks after arriving at the Desoto County Jail, Darnell Wilson filed a

---

[1] [Doc. 1], Complaint at Page 3 of 48.

[2] Exhibit F, Memorandum of Amie Carr (undated); Exhibit G, Affidavit of Amie Carr.

fifty-six page complaint in this court.[3] The court (1) dismissed all plaintiffs other than Darnell Wilson, and (2) ordered that Wilson file an Amended Complaint listing only himself as Plaintiff and summarizing his claims in the document. Wilson filed the instant Complaint on May 21, 2010 [Doc. 1]. As part his amended complaint, Wilson reiterates his previous claims and adds claims made since the time of the initial filing, yielding a forty-eight page complaint.

Wilson's claims are legion and can be summarized as set forth below.

1) General Conditions of Confinement:

| | |
|---|---|
| Verbal abuse | No face towels |
| Inadequate Bedding (for 2 days) | Ants in lockdown cell (for 2 days) |
| One razor provided each 14 days | Three inmates housed in 2-man cell |
| Locked down 18 hours per day | Inadequate cleaning supplies |
| Food not individually wrapped | Slow response to call button |
| Food served cold | French fries limp or overcooked |
| Oranges too ripe or too green | No food at all for a day |
| Food prepared in the hall (not the kitchen) | |

2) Excessive Force

The defendants shoved, slapped, and punched Wilson because he is homosexual.

3) Failure to protect

The DeSoto County Jail does not conduct fire drills.

4) Denial of Access to the Courts

The DeSoto County Jail has no library.

---

[3]*Wilson v. Rascoe, et al.* Civil Action No. 2:10-mc-00001-JAD, drafted December 10, 2009, filed January 6, 2010.

The defendants refused to provide "flex pens" to inmates.

5) Denial of Right to Worship

Wilson was locked in his cell during Sunday worship on one occasion.

6) Due Process

Wilson was placed for two days in lockdown without a hearing.

7) Mail tampering

The DeSoto County Jail passed out mail only three days per week. Wilson's family mailed him stamps and envelopes, but defendants returned them.

8) Denial of Medical Care

Failure to provide cream for rash that developed when the Wilson was denied sheets and slept on a bare plastic pad.

9) Improper inventory of plaintiff's property

The defendants did not provide enough detail on Wilson's property list to prevent theft.

**General Conditions**

The Eighth Amendment provides "protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989)(citation omitted). "Inmates cannot expect the amenities, conveniences, and services of a good hotel." *Id.* at 849 n.5 (citation omitted). Prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care . . . ." *Woods v. Edwards*, 51 F.3d

577, 581 n.10 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Based upon a review of the "totality of the circumstances," *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990), Wilson's claims do not rise to the level of a constitutional violation. He has not identified any "basic human need" which he was denied for an unreasonable period of time. *See Woods*, 51 F.3d at 581.

## Lack of Cleaning Supplies

There was never any lack of cleaning supplies. According to Wilson's complaint and *Spears* hearing testimony, the jail staff provided him with cleaning supplies nearly every day, but Wilson would not use them because they had already been used to clean other cells. He thus believed them to be contaminated. He wanted a bleach-based cleaner so he could use his own hand cloth the clean the walls, floors, furniture, vents – everything. He wanted to clean everything top to bottom – every day. This claim is wholly without merit and will be dismissed.

## Other General Conditions of Confinement Claims

The following general conditions claims are facially insufficient to state a claim: verbal abuse, no face towels, inadequate bedding (for two days), ants in his lockdown cell for two days, only one razor to use for fourteen days, food not individually wrapped, slow response to call button, food served cold, french fries limp or overcooked, oranges too ripe or too green, no food at all for a single day, housing three inmates in a two-man cell, placement in lockdown for eighteen hours per day, and preparation of food in the hall, rather than the kitchen. The only claim meriting discussion is Wilson's placement in a two-man cell with two other inmates for about eighteen hours per day. Wilson states that this arrangement lasted for several weeks. He and the other inmates got to walk around after lunch

for two hours each day, and from 6:15 p.m. until 9:45 p.m. each evening. Wilson has alleged no injury of any kind from this temporary housing situation. These claims simply do not rise to the level of a constitutional violation. He has not shown that he was deprived of a basic human need for an unreasonable amount of time. As such, these allegations will be dismissed for failure to state a constitutional claim.

## Excessive Force

Wilson claims that on March 1, 2010, Officer Green slapped and smacked him in the face, and Officer Casey punched Wilson in the mouth – and both of them shoved him back and forth between them. Wilson has not, however, alleged that he was injured in any way from this treatment. Wilson believes that this incident rises to the level of excessive force used against him in violation of the Eighth Amendment. In order to balance the constitutional rights of convicted prisoners with the needs of prison officials to effectively use force to maintain prison order, the plaintiff must prove the force was applied "maliciously and sadistically to cause harm," and not "in a good-faith effort to maintain or restore discipline . . . ." *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)); *see Rankin v. Klevenhagen*, 5 F.3d 103 (5th Cir. 1993). Not every malevolent touch by a prison official gives rise to a constitutional claim of excessive force; in fact, the Eighth Amendment prohibition against "'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (citations omitted). A single incident of force or a single blow is *de minimis* and thus does not violate of the Eighth Amendment. *Jackson v.*

*Colbertson*, 984 F. 2d 699, 700 (5th Cir. 1993). Though such behavior by the defendants, if proven, is improper, it does not rise to the level of a constitutional violation. It is a single incident of force which resulted in no injury or, at most, *de minimis* injury. As such, Wilson's claim of excessive force will be dismissed for failure to state a constitutional claim.

### Interference with Wilson's Right to the Free Exercise of His Religion

Wilson claims that when he was locked down, the defendants took so long to respond to his call button buzzer that he missed Sunday church services on May 2, 1010. This single occurrence of missing Sunday church services during lockdown is simply not a significant interference with Wilson's free exercise of religion. This allegation will be dismissed for failure to state a constitutional claim.

### Denial of Access to the Courts

Wilson also claims that the defendants did not maintain a law library of any kind, provided no pens for him to write with, and frustrated his attempts to litigate by refusing to accept envelopes, stamps, and papers his family mailed to him. *Bounds v. Smith*, 430 U.S. 817, 821 (1977), prisoners possess a constitutional right of access to courts, including having the "ability . . . to prepare and transmit a necessary legal document to court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996), quoting *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993), *cert. denied*, 510 U.S. 1123 (1994). The right of access to the courts is limited to allow prisoners opportunity to file nonfrivolous claims challenging their convictions or conditions of confinement. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). "Interference with a prisoner's right to access to the courts, such as delay, may result in a constitutional deprivation." *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (citations omitted).

However, such a claim "is not valid if a litigant's position is not prejudiced by the alleged violation." *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir. 1992), *cert. denied,* 504 U.S. 988 (1992), citing *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988). It is only when a prisoner suffers some sort of actual prejudice or detriment from denial of access to the courts that the allegation becomes one of constitutional magnitude. *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993); *see Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987). To prove his claim, a plaintiff must show real detriment – a true denial of access – such as the loss of a motion, the loss of a right to commence, prosecute or appeal in a court, or substantial delay in obtaining a judicial determination in a proceeding. *See Oaks v. Wainwright*, 430 F.2d 241 (5th Cir. 1970). Wilson has not alleged any detriment to his legal position in any case. Indeed, Wilson has presented this court with lengthy and voluminous pleadings in this and other cases. He has enjoyed access to the courts. For these reasons, the plaintiff's allegation of denial of access to the courts will dismissed for failure to state a constitutional claim.

**Denial of Due Process**

Wilson believes the defendants violated his right to due process by placing him for two days in lockdown for possessing two blankets, rather than the one allotted to each jail inmate. The defendants told Wilson that inmates could not have extra sheets or blankets because in the past inmates had used them to commit suicide. In view of the Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), the court concludes that the plaintiff has failed to set forth a claim which implicates the Due Process Clause or any other constitutional protection. "States may under certain circumstances create liberty interests

which are protected by the Due Process Clause [, but] these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* 115 S. Ct. at 2300 (citations omitted). In the *Sandin* case, the discipline administered the prisoner was confinement in isolation. Because this discipline fell "within the expected parameters of the sentence imposed by a court of law," *id*. at 2301, and "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," *id*., the Court held that neither the Due Process Clause itself nor State law or regulations afforded a protected liberty interest that would entitle the prisoner to the procedural protections set forth by the Court in *Wolff v. McDonnell*, 418 U.S. 539, 41 L. Ed. 2d 935 (1974). *See also Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (holding prisoner's thirty-day loss of commissary privileges and cell restriction due to disciplinary action failed to give rise to due process claim).

Wilson was placed in lockdown for two days because he violated the rules of the DeSoto Count Jail. This small deprivation falls within the expected parameters of prison life; it certainly is not a significant deprivation. Wilson's due process claim will be dismissed.

**Failure to Protect**

Wilson claims that the DeSoto County Sheriff's Department does not conduct fire drills at the jail – and that this policy puts his health and safety at risk. He believes that this decision shows that the defendants have failed to protect him. "The Eighth Amendment affords prisoners protection against injury at the hands of other inmates" *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). Deliberate indifference "[is] the proper standard to apply in

the context of convicted prisoners who claim[] . . . the failure to protect." *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1396 (5th Cir. 1995). The instant case also contains an aspect of a "failure to train" type case. The Fifth Circuit has held that "[f]ailure to train . . . can support § 1983 liability 'only where the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact.'" *Evans v. City of Marlin, Texas*, 986 F.2d 104, 107 (5th Cir. 1993).

The standard for "deliberate indifference" in conditions of confinement cases is not met "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Wilson has not shown that by allegedly failing to conduct fire drills, the defendants "consciously disregard[ed] a substantial risk of serious harm," which is necessary to state a claim cognizable under § 1983. *Id.* at 826 (citation omitted). This claim is frivolous and will be dismissed.

**Mail Tampering**

This claim is separate from that of denial of access to the courts, which was discussed above. Wilson discusses difficulty regarding both his outgoing mail and incoming mail, which the court will discussed separately. In order for Wilson to prevail on his claim of unconstitutional tampering with his outgoing mail, he must prove each of the following elements by a preponderance of the evidence: (1) that the prison officials intentionally confiscated his outgoing mail, and (2) that the confiscation of his mail resulted in actual harm to him. *Wolff v. McDonnell*, 418 U.S. 539, 575-77 (1974)*, Brewer v. Wilkerson*, 3 F.3d 816, 824-25 (5th Cir.

1993), *Lewis v. Casey*, 518 U.S. 343, 349 (1996), *Jones v. Greninger*, 288 F.3d. 322, 325 (5th Cir. 1999). In this case, as to his outgoing mail, Wilson complains only that the jail delivered both outgoing and incoming mail three times per week, rather than five times per week. Wilson has not alleged that this policy, which caused only minor delays, caused him any harm. This claim will, therefore, be dismissed. Wilson also claims that jail staff would not permit his mother to send him envelopes of postage. Again, Wilson has alleged no harm from these acts. He was able to send mail to others three times per week, and he could receive mail (other than stamps and envelopes) on that schedule. His frequent filings with the court – and his receipt of court mailings – speak to his ability to send and receive mail, with or without the stamps and envelopes the jail rejected. This claim is also without merit and will be dismissed.

## Denial of Medical Treatment

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may knowledge of substantial risk of serious harm be inferred by a court from the obviousness of the substantial risk. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). This same subjective deliberate indifference standard has been applied to pre-trial detainees under the Fourteenth Amendment as well as convicted inmates under the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

In this case, Wilson alleges that he developed a rash, requested a cream to relieve the itching, and never received it. He has only his unsupported subjective belief that whoever received his request maliciously discarded it. In addition, he has claimed no injury other than temporary discomfort from the rash, which did not constitute a serious medical need. This is insufficient to state a claim for denial of adequate medical care, as claims involving inmates facing far more serious conditions and suffering far more harm have been rejected by the Fifth Circuit Court of Appeals. In *Stewart v. Murphy*, 174 F.3d 530 (5th Cir. 1999), the plaintiff, a paraplegic, died from ulcers penetrating to the bone, caused by sitting in his own urine and feces. Though medical personnel largely ignored the problem until it became life-threatening, they eventually provided some medical care, including referral to a free-world specialist, who ordered intensive physical therapy and debridement of the dead and infected tissue. *Id.* The Mississippi

Department of Corrections medical staff did not follow the free world doctor's orders, and the plaintiff again became critically ill. *Id.* Though prison doctors eventually tried to treat the infection with antibiotics, it was too late, and the plaintiff died. *Id.* When the plaintiff's heirs brought a suit alleging denial of adequate medical care under 42 U.S.C. § 1983, this court found for the plaintiff. The Fifth Circuit, however, reversed, holding that though the plaintiff received greatly delayed treatment, and sometimes the wrong treatment, these actions evinced only negligence – and were thus insufficient to sustain a claim for denial of adequate medical treatment under 42 U.S.C. § 1983. *Id.* Given the grave nature of the illness in *Stewart*, the abysmal care provided, and the Fifth Circuit's rejection of those claims, Wilson's allegations in the present case simply do not rise to the level of a constitutional claim and will be dismissed.

**Taking of Property Without Due Process**

Wilson claims that the DeSoto County Jail does not properly inventory each inmate's possessions, leaving him without recourse if someone steals or loses his property because, without a proper inventory, he could not even prove that he owned the property. Wilson has not, however, alleged that his property has been stolen or lost. As such, he has not stated a claim under the Constitution, and this allegation will be dismissed.

**Conclusion**

In sum, none of the plaintiff's allegations has merit; the motion by the defendants for summary judgment will be granted and judgment entered in favor of all remaining defendants. A

final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED,** this the 25th day of September, 2012.


           **/s/ MICHAEL P. MILLS**
           **CHIEF JUDGE**
           **UNITED STATES DISTRICT COURT**
           **NORTHERN DISTRICT OF MISSISSIPPI**